# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# COOKEVILLE DIVISION

| SHANNON LYNN DAY, | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | No. 2:16-cv-00002 |
| | ) | CHIEF JUDGE CRENSHAW |
| WHITE COUNTY, TENNESSEE, et al.,, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

The Yoko Sumi Gaeshi is an uncommon, yet effective, takedown move used in Brazilian Jiu Jitsu. Stephan Kesting, Top 10 Throws and Takedowns for BJJ, available at www.grapplearts.com/top-10-throws-and-takedowns-for-bjj (June 15, 2015). When successfully completed, the thrower "typically end[s] up in a very strong side control position, ready to continue your attack and tap [his or her] opponent out!" Id. While that move may be appropriate and effective in a Jiu Jitsu competition, it is rarely appropriate for a prison guard to use while escorting a prisoner to his cell. White County, Tennessee, Deputy Sheriff Joseph Thomas used a takedown maneuver similar to the Yoko Sumi Gaeshi on Shannon Day, causing a bone fracture and leading to this action brought under 28 U.S.C. § 1983. Before the Court are Motions for Summary Judgment filed by Quality Correctional Health Care, Inc. (Doc. No. 20), White County, and Thomas (collectively Doc. No. 31). Day also filed a Cross-Motion for Partial Summary Judgment on his excessive force claim against Thomas. (Doc. No. 37.) For the following reasons, Defendants' Motions are granted in part and denied in part, and Day's Motion is denied.

I. UNDISPUTED FACTS

On November 7, 2012, Day was arrested and taken to the White County Jail for violating a protective order. (Doc. No 48 at 1.) At the jail, Day made more than the one phone call allowed under the jail policies, so Thomas approached Day and told him three times to get off the phone. (Id. at 2.) When Day refused, Thomas reached around Day and hung up the phone. (Id. at 3.) Thomas then put his hand on Day's back, indicating that he wanted Day to walk back to his cell. (Doc. No. 47-7 at 7.) Thomas claims Day cursed at him three times, leading Thomas to put his fist in the middle of Day's back "to control the situation." (Id. at 4-5; Doc. No. 48 at 4-5.) When Thomas' fist was pushing on Day's back, Day started turning in the direction of the exit door, although the video of the incident does not depict Day making any effort to escape, at which point Thomas put both his arms around Day's neck and performed a takedown maneuver (similar to the Yoko Sumi Gaeshi), ending in a strong side control position. (Doc. No. 35.)

Day lost consciousness as he hit the ground, and Thomas held him down until Gregory Matthews, another correctional officer, came to assist. (Id.; Doc. No. 48 at 6.) Once Thomas handcuffed Day, the two officers searched Day for contraband, finding a pen hidden in his pants. (Doc. No. 48 at 6.) The officers helped Day stand up and escorted him to a different cell away from the sally port door. (Id. at 7.) Day testified that he fractured a bone in his shoulder during the fall (Doc. No. 27-4 at 6), which Quality Correctional Health Care verifies (Doc. No. 21-1 at 1).

Day made multiple written requests for medical treatment for his shoulder by filling out a request form and placing it under his door. (Doc. No. 47-7 at 9.) Someone, although it is unclear from the record if the person is a White County or Quality Correctional Health Care official, is supposed to sign the form and return it to Day. (Id. at 10.) This never happened. (Id.) He also made three to five verbal requests per day to "everybody in command that [he] could see." (Doc. No.

27-4 at 3.) The officers ignored every request, both verbal and written. (Id. at 4.) The Quality Correctional Health Care nurse would also visit Day's cell twice per day, and each time Day would request medical attention for his "broken shoulder" and each time the nurse told him to fill out a request. (Id. at 6.)

On November 30, 2012, Day was walking down a narrow corridor in the jail and passed the open door to the area staffed by an employee of Quality Correctional Health Care. (Id. at 5; Doc. No. 21 at 1.) While there, he "pleaded to the" nurse that he needed treatment for his shoulder. (Doc. No. 27-4 at 5.) The nurse ordered an x-ray examination, which found that Day fractured his left shoulder. (Doc. No. 21-1.) The nurse never discussed the results with Day. (Doc. No. 27-4 at 9.) The next day, a different nurse gave Day an immobilizer sling for his shoulder and a prescription for 800 mg of Motrin twice per day. (Doc. No. 27-2 at 2.)

On December 4, 2012, Day was taken to an orthopedic clinic in Cookeville, Tennessee. (Id. at 2-3.) After that appointment, the doctor scheduled an MRI on Day's shoulder for December 13, 2012. (Doc. No. 21-1.) After the MRI, Carl Hollmann, M.D., prescribed no further treatment. (Doc. No. 27-2 at 3.) Day was released from the White County Jail on December 21, 2012. (Id. at 3.)

## II. EXCESSIVE FORCE

Day brings an excessive force claim against Thomas, pursuant to 28 U.S.C. § 1983. (Doc. No. 1 at 10-12.) In response, Thomas asserted qualified immunity, alleging that he did not violate any of Day's clearly defined constitutional rights. (Doc. No. 32.) Day, in turn, moved for summary judgment on this claim, arguing that no reasonable jury could find that Thomas acted reasonably. (Doc. No. 38.)

A. QUALIFIED IMMUNITY STANDARD

The Supreme Court set forth the standard for qualified immunity suits:

> In [Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001)], this Court mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right. 533 U.S., at 201, 121 S.Ct. 2151. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Ibid. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right. Anderson, at 640, 107 S.Ct. 3034.

Pearson, 555 U.S. at 232. In evaluating if a defendant is entitled to qualified immunity, the Court must adopt "the plaintiff's version of the facts . . . unless the plaintiff's version is 'blatantly contradicted by the record, so that no reasonable jury could believe it." Soudemire v. Mich. Dept. of Corr., 705 F.3d 560, 565 (6th Cir. 2013) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). The plaintiff "has the burden to prove that a right is clearly established." Everson v. Leis, 556 F.3d 484, 494 (6th Cir. 2009) (citing Barrett v. Steubenville City Sch., 388 F.3d 967, 970 (6th Cir. 2004)). When, on summary judgment, "the legal question of immunity is completely dependent on which view of the disputed facts is accepted by the jury," then summary judgment must be denied. Humphrey v. Mabry, 482 F.3d 840, 846 (6th Cir. 2007) (quoting Brandenburg v. Cureton, 882 F.2d 211, 216 (6th Cir. 1989)).

B. VIOLATION OF CLEARLY ESTABLISHED RIGHT

When a pretrial detainee alleges excessive force, in violation of the Fourteenth Amendment to the United States Constitution, he must prove "that the force purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 135 S.Ct 2466, 2473 (2015). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" Id. (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). "A court must make this determination

from the perspective of a reasonable officer on the scene, including what the officer knew at the time . . . ." Id. A court must "account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" Id. (quoting Bell v. Wolfish, 441 U.S. 520, 540 (1979)).

C.  APPLICATION

Thomas argues that he is entitled to qualified immunity because Day turned toward the exit door, and he did not know if Day was going to attempt to escape or turn and confront Thomas. (Doc. No. 32 at 11.) Thomas therefore believes that his take-down of Day in that context was reasonable. (Id.) Day argues that Thomas was pushing him with the closed fist, and when Day reacted to being pushed, Thomas used Day's reaction as a reason to throw him to the ground. (Doc. No. 38 at 8.)

Here, the determination on whether Day was reasonable in performing the takedown while transporting an uncooperative prisoner to his cell is informed by the video of the incident. (Doc. No. 35.) Both sides agree that Day started turning, but the factual question is whether it was reasonable for Thomas to believe that Day was turning to flee from or confront Thomas or whether Day was just reacting to Thomas' fist against his back. After reviewing the video, the Court believes that a reasonable jury could agree with either side's interpretation of the takedown maneuver, making it inappropriate to grant summary judgment to either party. See Evans v. Plummer, 687 F. App'x 434, 441 (6th Cir. 2017) (dismissing an interlocutory appeal regarding the interpretation of a video depicting a takedown at a jail because the interpretation of a video is a question of fact). If the jury agrees with Day that he posed no threat to flee or to the officer's safety,

5

the takedown would be unreasonable. See Lawler v. City of Taylor, 268 F. App'x 384, 387 (6th Cir. 2008) (affirming the denial of qualified immunity when an officer performed a takedown of an unrestrained inmate in the booking room of a jail when the inmate raised his hand and was noncompliant with the officer's orders); Aldrich v. City of Columbus, No. 2:15-cv-404, 2016 WL 6084570, at *6 (S.D. Oh. Oct. 18, 2016) (Graham, J.) ("[T]he video shows that the only movements [the plaintiff] made were those that a reasonable jury could believe were caused by [the officer's] application of force."). However, a reasonable jury could also find that the officer acted reasonably in light of Day's noncompliance and his turning, which could be interpreted as an attempt to flee or confront Thomas. See Cai v. W. Bloomfield Tp., 485 F. App'x 92, 96 (6th Cir. 2012) (affirming the granting of qualified immunity when the officer used a Taser on a plaintiff attempting to flee). Accordingly, the cross-motions for summary judgment on the excessive force claim are both denied.

### D. MUNICIPAL LIABILITY AGAINST WHITE COUNTY

Day seeks to hold White County responsible for any excessive force he suffered at the hands of Thomas under the municipal liability theory of § 1983. (Doc. No. 1 at 12-15.) White County moves for summary judgment, arguing that Day has not identified any policy permitting the use of the takedown maneuver in an unconstitutional manner, nor has he established any failure to train the officers. (Doc. No. 32 at 16-18.) Day, on the other hand, cites ten cases filed in this District against White County alleging constitutional violations, arguing this establishes a pattern of conduct that should subject it to liability.

White County is entitled to summary judgment if, after construing all the facts in favor of Day, it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must construe all facts and inferences in favor the nonmoving party, Van Gorder v. Grand Truck W. R.R., Inc.,

6

509 F.3d 265, 268 (6th Cir. 2007), without weighing evidence or judgment the credibility of the witnesses, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment. Rogers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003).

To succeed on a municipal liability claim where the plaintiff asserts that a municipality has a custom of tolerance toward constitutional violations, he must show "(1) a clear and persistent pattern of misconduct; (2) notice or constructive notice on the part of the municipality; (3) the defendant's tacit approval of the misconduct; and (4) a direct causal link to the violations." Nouri v. Cty. of Oakland, 615 F. App'x 291, 296 (6th Cir. 2015).

Day fails to present evidence that White County has a "clear and persistent pattern of misconduct" regarding excessive force. While Day presented ten cases, only three have any sort of credible excessive force claim.[1] See Shorts v. Bartholomew, 255 F. App'x 46, 58 (6th Cir. 2007) (holding that the plaintiff must produce evidence of "any similar incidents" in which the inmate suffered similar unconstitutional conduct that was reported to the Sheriff). Those incidents, in Gillan v. White County, No. 2:06-cv-38 (M.D. Tenn.) (sexual assault by deputy sheriff), Judd v. White County, No. 2: 09-cv-76 (M.D. Tenn.) (bringing false arrest, excessive force, failure to train claims), and Hodge v. Human, No. 2:11-cv-10 (M.D. Tenn.) (false arrest and excessive force claims), occurred in approximately a five year period, from April 2005 to December 2009, and all settled prior to a final resolution of the case. Even if the Court credited all three excessive force

---

[1] Three of the remaining cases Day uses as proof of a pattern of misconduct were dismissed. Price v. Shoupe, No. 2:12-cv-2 (M.D. Tenn.) (failure to prosecute), Barnes v. White County Jail, No. 2:12-cv-36 (M.D. Tenn.) (failure to prosecute), and Margeson v. White County, Tennessee, No. 2:12-cv-52 (M.D. Tenn.) (jury found officers not liable). The remaining four involved unrelated claims. Cope v. White County, No. 2:06-cv-82 (complaint for unreasonable search and seizure, and illegal arrest and detention); Farris v. Shoupe, No. 2:11-cv-72 (M.D. Tenn.) (employment); Kress v. Gov't of White Cty., No. 2:13-cv-54 (M.D. Tenn.) (false arrest, false imprisonment, equal protection claims); Roberson v. Shoupe, No. 2:13-cv-54 (M.D. Tenn.) (deliberate indifference to serious medical needs).

7

claims, even though they never made it to a final disposition, a reasonable jury would not be able to find that a fourth incident in approximately seven years is a "clear and persistent pattern of misconduct." See D'Ambrosio v. Marino, 747 F.3d 378, 388 (6th Cir. 2014) (holding that three prior instances of prosecutorial misconduct is not sufficient to put the municipality on notice "that a comparable misconduct may occur in the future"). Accordingly, White County is entitled to judgment as a matter of law on the excessive force claim.

III. DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED

Day brings a deliberate indifference to serious medical needs claim against all three defendants. (Doc. No. 1.) All three defendants move for summary judgment. (Doc. Nos. 21, 32.) Deliberate indifference to serious medical needs claims brought by a pretrial detainee is cognizable under the Fourteenth Amendment to the United States Constitution. Spears v. Ruth, 589 F.3d 249, 254 (6th Cir. 2009) (citing Estate of Carter v. City of Detroit, 408 F.3d 305, 311 (6th Cir. 2005)).

A. THOMAS

Thomas moves for summary judgment on Day's deliberate indifference to medical needs claim because Day never requested medical attention from him. (Doc. No. 32 at 13.) In his response, Day only argues that White County is liable for deliberate indifference to medical needs, not Thomas, and therefore does not oppose this motion. M.D. Tenn. L.R. 7.01(b) (failure to respond to an argument in a motion indicates no opposition). Here, there is no evidence from which a jury could conclude that Thomas had a sufficiently culpable state of mind in denying medical needs because Day never requested medical care from Thomas and the video does not depict that Day appeared injured after the takedown. See Blackmore v. Kalamazoo Cty., 390 F.3d 890, 896 (6th Cir. 2004) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994) (holding that the officer must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm

8

exists and [the officer] ignored that risk")). Accordingly, Thomas is entitled to summary judgment on this claim.

B. WHITE COUNTY AND QUALITY CORRECTIONAL HEALTH CARE

White County and Quality Correctional Health Care are also entitled to summary judgment on the deliberate indifference of serious medical needs claim. To hold a municipality liable, which includes a private corporation employed by the municipality, Street v. Corr. Corp. of Am., 102 F.3d 810, 818 (6th Cir. 1996) (quoting reference omitted), a plaintiff must prove (1) that a violation of a federal right took place, (2) that the violating officers acted under color of state law, and (3) that a municipality's policy or custom caused that violation to happen. Bright v. Gallia Cty., Oh., 753 F.3d 639, 660 (6th Cir. 2014) (citing Lambert v. Hartman, 517 F.3d 433, 439 (6th Cir. 2008)). The officer who violated the plaintiff's constitutional rights does not have to be named in the Complaint so long as the plaintiff proves that a violation of a federal right occurred. See Cole v. City of Memphis, 829 F.3d 530, 542 (6th Cir. 2016) (finding that the city's policy caused plaintiff to be arrested even though the arresting officer was dismissed prior to trial).

Based on the record before the Court, no reasonable jury could concluded that Day proved a deliberate indifference of serious medical needs claim. Where, as here, a plaintiff ultimately receives treatment for his injury, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of [any delay] in medical treatment to succeed." Napier v. Madison Cty., Ky., 238 F.3d 739, 742 (6th Cir. 2001) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994)). It is Day's burden to produce admissible medical records to survive summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (the plaintiff has the burden of produce evidence that would support a jury verdict).

While Day produced certain medical records in this case (Doc. No. 38-6), they are hearsay that would be inadmissible at trial. Norton v. Colyer, 828 F.2d 384, 386 (6th Cir. 1987). At times, medical records may be admissible under the business records exception if the records satisfy the five requirements specified in Federal Rule of Evidence 803(6)(A)-(E). See Saley v. Caney Fork, LLC, 886 F. Supp. 2d 837, 847 (M.D. Tenn. 2012) (Trauger, J.) (finding that an affidavit that certifies that the medical records comply with Rule 803(6) is sufficient to make the medical records admissible for the purposes of summary judgment). Day does not provide any evidence that the medical records he produced qualifies as a business record under Rule 803(6), such as producing an affidavit by someone with knowledge.[2] There is no verifying medical evidence that the delay in treatment caused Day any harm. Day cannot prove an underlying constitutional claim for deliberate indifference to serious medical needs, and White County and Quality Correctional Health Care are entitled to summary judgment.

IV. EQUAL PROTECTION VIOLATION AGAINST THOMAS

To the extent that Day brings an equal protection claim against Thomas, the officer moved for summary judgment because Day is not a member of a protected class. (Doc. No. 32 at 6.) Day does not oppose this argument. M.D. Tenn. L.R. 7.01(b) (failure to respond to an argument indicates no opposition). Day does not allege that he was discriminated against because of his membership in a protected class, Bass v. Robinson, 167 F.3d 1041, 1050 (6th Cir. 1999), and therefore summary judgment is granted to Thomas.

---

[2] Even if the Court considered the medical records provided by Plaintiff (Doc. No. 38-6), Dr. Hollmann only states that "it has been almost a month since his injury and he still has pain." There is no evidence, as would be required, that the delay in medical treatment caused any detrimental effect to Plaintiff, as required by Napier. The medical records produced by Quality Correctional Health Care support this conclusion, especially as Dr. Hollmann stated on December 17, 2012, that the correct course of action is to "wait these out." (Doc. No. 21-2.) Two months later, Professor Alex Diamond, D.O., M.P.H., stated that the delay in treatment caused Day to be "a little stiff," but still only prescribed ibuprofen. (Doc. No. 21-3.) No further inadmissible medical records are in the record. None of these show any detriment from the delay of treatment from November 7 to November 30, 2012. As such, summary judgment would still be granted should the Court have considered the inadmissible evidence.

V. CONCLUSION

For the foregoing reasons, Quality Correctional Health Care's Motion for Summary Judgment (Doc. No. 20) is granted, White County and Thomas' Motion for Summary Judgment (Doc. No. 31) is granted in part and denied in part, and Day's Motion for Partial Summary Judgment (Doc. No. 37) is denied. Day's excessive force claim against Thomas will proceed to trial.

The Court will issue an appropriate order.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE